**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **HOWELL W. WOLTZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 5:10-0487** |
| | ) | |
| **JOHN GRIMES, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

On April 15, 2010, Plaintiff, acting *pro se* and incarcerated at FCI Beckley in Beckley, West Virginia, filed his letter-form Complaint in this matter claiming entitlement to relief pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395-97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[1] (Document No. 1.) By letter dated April 16, 2010, the Clerk directed Plaintiff to file the appropriate Complaint Form. (Document No. 3.) On May 5, 2010, Plaintiff filed his Complaint on the appropriate form. (Document No. 4.) Plaintiff names the following as Defendants: (1) John Grimes, Counselor; (2) Beverly Smith, Case Manager; (3) James Childress, Case and Unit Manager; (4) M. Lewis, Unit Secretary; (5) FCI Beckley; and (6) FPC Beckley. (Id., p. 4.) Plaintiff complains that Defendants improperly required him to name FCI Beckley as his place of residence on the 2010 Census Form. (Id., pp. 4 - 5.) Specifically, Plaintiff states as follows:

> On April 1, 2010, under the leadership of defendant John Grimes, defendants ordered and forced nearly 200 men to put the prison as their home residence in order to shift

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

their congressional representation and attendant allocation of federal funding to the congressional district of local prison employee union's representative and local community instead. This was in contravention of notice dated March 29, 2010, which was not posted until 3:30 p.m., the day of the fraud, and well after its execution was complete. Defendant Grimes ordered men to fill out the form improperly under color of law and authority as a prison official. (See Woltz Affidavit) Case Manager Smith ordered properly completed forms to be fraudulently altered as her authority as a prison official (See Smith Affidavit), as did Case & Unit Manager Childress (See Wood Affidavit) and Unit Secretary M. Lewis (See Herrera Affidavit). These false claims on the United States were filed with, and by, FPC-Beckley and FCI-Beckley. This violated the constitutional rights of men under defendants' authority under color of law, outside their legal authority, personally and official.

(Id.) Plaintiff requests the following relief: (1) "Nominal damages in the amount of $25 per defendant;" (2) "Compensatory damages in the amount of reimbursement of filing fee and expenses of bring suit;" and (3) Punitive damages. (Id., p. 5.)

In support, Plaintiff attaches the following Exhibits: (1) A copy of Plaintiff's Affidavit (Id., pp. 8 - 9.); (2) A copy of a "Memorandum for Inmate Population" dated March 29, 2010, from Warden Berkebile regarding the "United States Census 2010" (Id., p. 10.); (3) A copy of an Affidavit from Inmate Jerome Woody stating that Defendants Grimes and Childress required him to name the prison as his place of residence instead of his home state of Georgia (Id., p. 11.); (4) A copy of an Affidavit from Inmate Marcus Vickers stating that Defendants Grimes and Smith required him to list the prison as his place of residence (Id., p. 12.); (5) A copy of an Affidavit from Inmate Christopher Herrera stating that Defendants Grimes and Lewis required him to name the prison as his place of residence instead of his hometown of Asheboro, North Carolina (Id., p. 13.); and (6) A copy of an Affidavit from Inmate George Smith stating Defendants Grimes and Smith required him to list the prison as his place of residence instead of his home address of Rocky Mt., Virginia (Id., p. 14.).

On May 11, 2010, Plaintiff filed a "Motion to Add New Defendant Pursuant to Rule 20(a)(2)(A)." (Document No. 6.) Plaintiff states that he wishes to add Mr. Gary Locke, United States

2

Secretary of Commerce, as a defendant. (<u>Id.</u>) In support of his Motion, Plaintiff states as follows (<u>Id.</u>, p. 1.):

1.  Honorable Gary Locke, Secretary of the United States Department of Commerce, has purview over the Census Bureau and the fraud committed by defendants on April 1, 2010.

2.  Under Rule 20(a)(2)(A), "Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or serious of transactions or occurrences."

3.  The Honorable Secretary of Commerce has several liabilities in the matter at hand, not as a perpetrator of the crime with the other defendants, but by nature and force of the office he holds with authority to provide relief needed and limit the extent of harm resulting from crime of other defendants named in the original Complaint.

Also on May 11, 2010, Plaintiff filed a "Memorandum of Law in Support of Temporary Restraining Order and Preliminary Injunction" (Document No. 7.), "Memorandum of Points and Authorities" (Document No. 8.), and "Declaration of Howell Woltz" (Document No. 9.). In his "Memorandum of Law in Support of Temporary Restraining Order and Preliminary Injunction," Plaintiff states that "[a] hearing at the court's earliest convenience is required to avoid irreparable injury to not only the plaintiff, but all citizen affected by the mis-allocation of congressional representation and billions of dollars of federal funds, through the fraudulent false claims of defendants and others." (Document No. 7, p. 1.) Plaintiff argues that "[n]othing short of a Temporary Restraining Order is likely to rein in the government's reckless indifference to criminal activity amongst its own brethren, and make way for a hearing to establish a Preliminary Injunction." (<u>Id.</u>, pp. 1 - 2.) Plaintiff requests a "recount of the institution's population under the watchful eye of a census personnel rather than the defendants. (<u>Id.</u>, p. 2.) In his "Memorandum of Points and Authorities," Plaintiff states "his points and authorities in support for Motion to Add New Defendant

[is] Rule 20(a)(2)(A) of the Federal Rules of Civil Procedure." (Document No. 8.) In his Declaration, Plaintiff argues that "[t]he census fraud committed by defendant Grimes, Smith, and Childress on April 1, 2010, denied nearly 200 men of their constitutional right to the proper allocation of congressional representation and federal funding of their home communities, under color of law." (Document No. 9, p. 1.) Plaintiff contends that "allow[ing] the distortion caused by the crime of the defendants named above, is tantamount to handing a congressional seat to a community not deserving of it, along with millions of dollars in what can only be described properly as stolen money." (Id., pp. 1 - 2.) On June 7, 2010, Plaintiff filed his Affidavit regarding the payment of his filing fee. (Document No. 11.) The Court received the payment of Plaintiff's filing fee on June 11, 2010. (Document No. 12.)

## STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these

4

standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

## DISCUSSION

1.  **Exhaustion of Administrative Remedies.**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[2] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused

---

[2] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See

6

Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir.

2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the

burden of proving that the inmate had available remedies which he did not exhaust. See Dale v.

Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a

precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an

affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted))

The Court is not precluded, however, from considering at the outset whether an inmate has exhausted

administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to
> be pleaded and proven by the defendant. That exhaustion is an affirmative defense,
> however, does not preclude the district court from dismissing a complaint where the
> failure to exhaust is apparent from the face of the complaint, nor does it preclude the
> district court from inquiring on its own motion into whether the inmate exhausted all
> administrative remedies.

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a

prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's

administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see

Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper

exhaustion demands compliance with an agency's deadlines and other critical procedural rules

because no adjudicative system can function effectively without imposing some orderly structure on

the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an

Administrative Remedy Program, 28 C.F.R. § 542.10, et seq., through which an inmate may seek

formal review of issues or complaints relating to confinement. Depending upon at what level an

inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance

procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints

7

informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In his Complaint, Plaintiff acknowledges that he did not exhaust his administrative remedies. (Document No. 4, p. 3.) Plaintiff contends that exhaustion is not required because his claim is "not dealing with prison conditions." (Id.) Although Section 1997(e) does not define "prison conditions,"

8

another portion of the PLRA defines the phrase "civil action with respect to prison conditions." Section 3626(g)(2) defines the phrase "civil action with respect to prison conditions" as "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison . . . ." 18 U.S.C. § 3626(g)(2).[3] In his Complaint, Plaintiff alleges that prison staff improperly required inmates at FCI Beckley to name the prison as their place of residence for the 2010 Census. The Court, therefore, finds that the claims contained in Plaintiff's Complaint involve the "effects of actions by government officials on the lives of persons confined in prison." Accordingly, the undersigned respectfully recommends that this matter should be dismissed based upon Plaintiff's failure to properly exhaust his administrative remedies. Notwithstanding Plaintiff's failure to exhaust, the undersigned will briefly consider the merits of his claims.

2.      **United States Census 2010:**

Plaintiff argues that Defendants Grimes, Smith, Childress, and Lewis committed fraud and acted "in contravention of notice date March 29, 2010" by requiring inmates to name the prison as their place of residence for purposes of the 2010 Census. Plaintiff explains that on March 29, 2010, Warden Berkebile posted a "Memorandum for Inmate Population" stating that inmates should use their "usual residence address if one exists." Plaintiff alleges that this Memorandum was posted after inmates were improperly required by Defendants Grimes, Smith, Childress, and Lewis to name the prison as their place of residence. Plaintiff asserts that Defendants Grimes, Smith, Childress, and Lewis committed the above act "in order to shift their congressional representation and attendant allocation of federal funding to the congressional district of local prison employee union's

_____

[3] The undersigned notes that Section 3626 was enacted as part of the PLRA to address suits by prisoners for injunctions and other forms of prospective relief.

representative and local community."[4] Based on the "Memorandum for Inmate Population" issued by Warden Berkebile on March 29, 2010, Plaintiff contends that inmates should have been allowed to use their "home address" as their place of "usual residence."

The United States Constitution requires Congress to conduct a decennial census "in such Manner as they shall by Law direct" for the apportionment of congressional representation to the states. U.S. Const. Art. I, § 2; U.S. Const. Amend. 14, § 2. In the Census Act, Congress delegated broad discretion to the Secretary of Commerce to conduct the census "in such form and content as he may determine, including the use of sampling procedures and special surveys." 13 U.S.C. § 141(a). The Secretary is permitted by Congress to delegate his authority to the Census Bureau. 13 U.S.C. § 4. The Secretary oversees the Census Bureau, which is an agency within the Department of Commerce responsible for conducting the decennial census. 13 U.S.C. §§ 2, 4, and 21.

During the 2010 Census, the Census Bureau applied the "residence rule" in determining where people were to be counted. Residence Rule and Residence Situations For the 2010 Census § 3. The "residence rule" provides that people should be counted as follows: (1) "Count people at their usual residence, which is the place where they live and sleep most of the time;"[5] (2) "People in certain types of facilities or shelters (i.e., places where groups of people live together) on Census Day should be counted at the facility or shelter;" and (3) "People who do not have a usual residence, or cannot determine a usual residence, should be counted where they are on Census Day." Id. The Census Bureau further described how the "residence rule" applied to people in particular living

---

[4] Plaintiff does not allege that congressional representation or federal funding to his "home address" was actually effected by Defendant's alleged fraudulent conduct.

[5] "Usual residence is defined as the place where a person lives and sleeps most of the time." Residence Rule and Residence Situations For the 2010 Census § 2.

situations, such as adults confined in correctional facilities. Id. § 3 and 16. The Census Bureau specifically determined that individuals confined on April 1, 2010, to correctional residential facilities, federal detention centers, federal and state prisons, local jails, and other municipal confinement facilities, should be counted at that facility. Id. § 16; also see Borough of Bethel Park v. Stans, 449 F.2d 575 (3rd Cir. 1971)(finding that the Census Bureau properly enumerated college students, members of armed services stationed in the United States, and inmates of institutions as inhabitants of respective states in which their colleges, military bases, or institutions were located).

Based on the foregoing, the undersigned finds Plaintiff's claims are without merit. Plaintiff appears to argue that he should not have been counted as a resident of the prison because he does not consider FCI Beckley to be his "usual residence." Plaintiff, however, does not dispute that he was confined to FCI Beckley, a federal prison, on April 1, 2010. Further, a person's "usual residence" is not necessarily the same as the person's voting residence or legal residence. Residence Rule and Residence Situations For the 2010 Census § 2. Since Plaintiff was incarcerated at FCI Beckley on April 1, 2010, the undersigned finds Plaintiff was properly counted as a resident of the facility. Accordingly, Defendants did not act improperly or fraudulently in counting Plaintiff as a resident of FCI Beckley for the 2010 Census.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Plaintiff's Complaint (Document Nos. 1 and 4.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby

11

**FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: March 3, 2011.

R. Clarke VanDervort
United States Magistrate Judge